IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

KYMBERLY LAGRASSA MILES,

        Plaintiff,

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

        Defendant.

Case No. 6:15-cv-02369-SU

**OPINION
AND ORDER**

SULLIVAN, United States Magistrate Judge:

    Plaintiff Kymberly LaGrassa Miles brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied plaintiff Supplemental

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is substituted for former Acting Commissioner Carolyn W. Colvin as defendant in this suit.

Security Income ("SSI") under Title XVI of the Act. 42 U.S.C. § 1381 *et seq.* For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI on June 22, 2011. Tr. 258-68.[2] She originally asserted disability beginning August 1, 2005, Tr. 258, but subsequently amended that date to June 9, 2011, with a closed period of disability ending March 31, 2013. Tr. 40-41, 258, 370. Her claim was denied initially on November 2, 2011, and on reconsideration on January 4, 2013. Tr. 177-80, 184-85. A hearing was held April 24, 2014, before Administrative Law Judge ("ALJ") Janice E. Shave. Tr. 34-82 (hearing transcript). Plaintiff testified at the hearing, represented by counsel; a vocational expert ("VE"), Katie Macy-Powers, also testified. *Id.* On June 16, 2014, the ALJ issued a decision finding plaintiff not disabled under the Act and denying her SSI. Tr. 9-33. Plaintiff requested review before the Appeals Council, Tr. 6-8, which was denied October 15, 2015, Tr. 1-4. Plaintiff then sought review before this Court.[3]

## FACTUAL BACKGROUND

Born in 1969, plaintiff has a high-school-level education with some college. Tr. 103, 258. She has previously worked as a home health aide, Tr. 66, and currently works as "a tech for a detox and sobering company," Tr. 42. Plaintiff has been diagnosed with obesity, back pain, fibromyalgia, attention deficit disorder ("ADD"), bipolar disorder or other affective disorder (which the ALJ characterized as "bipolar disorder vs. depressive disorder vs. mood disorder due to medical condition"), anxiety disorder ("generalized anxiety disorder vs. a panic disorder"),

---

[2] Citations "Tr." refer to indicated pages in the official transcript of the Administrative Record filed with the Commissioner's Answer. (Docket Nos. 10, 11).
[3] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (Docket No. 5).

bilateral degenerative joint disease in the knees with chronic knee pain, irritable bowel syndrome, headaches, insomnia, diabetes mellitus type 2, urinary incontinence and recurrent urinary tract infections, and chronic fatigue. Tr. 14, 377, 386, 392, 400-05, 421-22, 427, 433, 439, 408, 451, 474, 476-78, 480, 483, 487, 494-97, 507, 512, 515, 525, 586, 617-18. Some of these conditions improved somewhat after plaintiff lost weight and had gastric bypass surgery in March 2012; plaintiff also allows that some conditions became non-severe on or after March 31, 2013. *See* Pl. Br., at 3 (Docket No. 20); Tr. 57-58, 603-05. Plaintiff has other conditions that have affected her functioning, including polycystic ovarian syndrome, urinary incontinence, reactive airway disease (when plaintiff was a smoker), hyperlipidemia, dysuria, urinary tract infections, gastroesophageal reflux disease, polymyalgia, and possible borderline intellectual functioning. Tr. 400, 402, 403, 439, 456, 477, 480, 507, 539, 629.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A]

reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the ALJ must evaluate medical and other evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the

claimant may still perform on a regular and continuing basis, despite any limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). The Commissioner proceeds to the fourth step to determine whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that plaintiff did not engage in substantial gainful activity during the alleged disability period of June 9, 2011, to March 31, 2013. Tr. 14. At step two, the ALJ found that plaintiff had the following severe impairments: obesity, back pain and myalgia, ADD, "bipolar disorder vs. depressive disorder vs. mood disorder due to medical condition," and "generalized anxiety disorder vs. panic disorder." *Id.* The ALJ found that the following were not severe impairments for plaintiff: post-Roux-en-Y gastric bypass surgery, history of methamphetamine dependence, chronically painful right knee, ankle injury and pain, diabetes mellitus, polycystic ovary syndrome, insomnia, irritable bowel syndrome, fibromyalgia, urinary incontinence, borderline intellectual functioning, and reactive airway disease. Tr. 15-17. At step three, the ALJ found that plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment. Tr. 17.

The ALJ then found that plaintiff had a RFC to perform light work, with certain physical, social, and mental limitations. Tr. 19. At step four, the ALJ found plaintiff unable to perform

any past relevant work. Tr. 26. At step five, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy, including housekeeper, photocopy machine operator, and marker, and so determined that plaintiff was not disabled under the Act during the period of June 9, 2011, to March 31, 2013, and not entitled to benefits. Tr. 27.

## ANALYSIS

Plaintiff argues that the ALJ in four regards: (1) in weighing the medical evidence and expert medical opinions; (2) in finding that the combination of severe impairments did not equal a listed impairment; (3) in finding plaintiff's symptom testimony less than credible; and (4) in formulating the RFC and finding that plaintiff could perform other work. The Court finds that the ALJ erred in weighing the medical evidence and medical expert opinions, and that the ALJ must as a result also reevaluate the RFC and whether plaintiff could perform other work. The Court finds that the ALJ did not err in the other ways plaintiff contends.

## I.     **Medical Evidence and Expert Medical Opinions**

Plaintiff criticizes the weight that the ALJ assigned to the expert testimony of four doctors: Pamela Roman, Ph.D., a consultant evaluating psychologist who evaluated plaintiff after the closed period of disability (whose opinion the ALJ gave "significant weight"), Tr. 23; Linda Jensen, M.D., a non-examining state physician (given "partial weight"), Tr. 25; two non-examining, consultant state mental health professionals, psychiatrist Robert Winslow, M.D., and psychologist Bill Hennings, Ph.D. (given "little weight"), Tr. 24; and plaintiff's treating physician, Kathleen Jackson, M.D. (given "little weight"), Tr. 25.[4]

---

[4] Plaintiff does not name the three doctors whose opinions she argues were incorrectly weighted. *See* Pl. Br., at 12 (Docket No. 20). She instead only lists descriptions of the doctors in what appears to be descending order of weight assigned. The Court infers that plaintiff means to identify Drs. Jensen, Winslow, and Hennings, in addition to Drs. Roman and Jackson.

The weight given to the opinion of a physician depends on whether the physician is a treating, examining, or nonexamining physician. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20 C.F.R. § 404.1527). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. "An ALJ can satisfy the 'substantial evidence' requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation omitted).

<u>Dr. Roman</u>: The ALJ erred in giving Dr. Roman's opinion "significant weight." Tr. 23. Dr. Roman performed her consultative examination on February 20, 2014, almost a year after plaintiff's closed period of disability ended. Tr. 624. Dr. Roman's opinions almost exclusively describe plaintiff's then-current conditions, and do not look back retrospectively into how plaintiff may have been impaired during the claimed period of disability. They thus are not instructive on how plaintiff may have been disabled during the relevant period. *See Cantrell v. Colvin*, No. 6:14-cv-01122-BR, 2015 WL 5167219, at *6 (D. Or. Sept. 3, 2015) (holding that ALJ did not err in giving treating physician only "some weight," where doctor did not "intend[] his opinion to reflect Plaintiff's condition during the relevant period"); *McIntyre v. Colvin*, No. CV-12-08076-PHX-GMS, 2013 WL 1364272, at *7 (D. Ariz. Apr. 3, 2013) ("[Plaintiff's] work attempts *after* the closed period should have no effect on her treating physician's opinion of whether she was able to work *during* the closed period in which she claims to have been

disabled." (emphasis in original)); *Blanchard v. Colvin*, No. 14-cv-03143-VC, 2015 WL 3523099, at *3 n.5 (N.D. Cal. June 3, 2015) (requiring ALJ to consider on remand whether doctors' opinions, rendered after plaintiff's closed period of disability, applied retroactively to closed period). The Commissioner argues that Dr. Roman "reviewed medical records dating back to 2011 and obtained Plaintiff's medical, social, and developmental history during the interview," Def. Br., at 15 (Docket No. 21), but this is a misleading characterization of Dr. Roman's opinions.[5] Dr. Roman apparently reviewed only two past records, a chemical dependency treatment center "assessment *summary*" from 2006, five years before the period of disability, Tr. 624 (italics added), and a single psychiatric evaluation from July 2011, *id.* The written assessment reflects a very basic personal and medical history, in no way comparable to a thorough review of medical history files. *See* Tr. 625-26. Dr. Roman's opinion begins, "The points to be covered in this examination are bipolar disorder, depression and attention deficit disorder." Tr. 624. However, Dr. Roman fails to mention or seemingly assess for bipolar disorder, and only reports minimal testing of attention with no actual discussion of the ADD diagnosis, despite repeated references to those disorders elsewhere, *e.g.*, Tr. 399, 400, 405, 408, 433, 446, 451, 511, 519, 521-22, 525 (bipolar disorder); Tr. 399, 405, 412, 566 (ADD). Dr. Roman then diagnoses "depression due to another medical condition (fibromyalgia) with major

---

[5] The Commissioner also states, and cites, as follows: "the ALJ was not required to provide explanations for opinions she did not reject. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (providing that the ALJ "need not discuss all evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected.'")." Def. Br., at 16 (Docket No. 21). The Commissioner apparently means that the ALJ cannot err in accepting, or giving significant weight to, doctors' opinions, but can only err in rejecting those opinions without explanation. However, this is not what *Vincent* holds: that decision merely endorses the unremarkable proposition that the ALJ "need not discuss *all* evidence presented to her." *Vincent*, 739 F.2d at 1395 (italics in original). And an ALJ may of course err in assigning one doctor's opinion greater weight than another's. *E.g.*, *Smolen v. Chater*, 80 F.3d 1273, 1285-88 (9th Cir. 1996) (holding that ALJ erred in assigning certain doctors' opinions greater weight than others').

depression-like episode." Dr. Roman does not explain, despite evidence of at least a full major depressive disorder diagnosis (a score in the "moderate" range on the Beck Depression Inventory, Tr. 628, and numerous reported depressive symptoms, *id.*), why her diagnosis is only depression *due to another medical condition*, or why she qualifies plaintiff's condition as only a "depression-*like* episode." The ALJ provides only a cursory explanation for why she assigned this opinion "significant weight," and weighted it more than the other doctors' opinions, other than to say that Dr. Roman "based her opinion on objective test results and clinical observations" (of plaintiff's state in 2014, after the closed period of disability). Tr. 23. This is insufficient to justify giving Dr. Roman's opinions more weight than plaintiff's treating physician's. *See Young v. Comm'r*, 214 F. Supp. 3d 987, 996 (D. Or. 2016) (holding ALJ erred in assigning doctor's opinion "significant weight," above other doctors', without "specific and legitimate [reasoning] supported by substantial evidence"). On remand, the ALJ shall reconsider the weight assigned to Dr. Roman's opinions and provide sufficient justification for that weighting, including a justification for weighting it above any treating doctors.

Dr. Jensen: Plaintiff never identifies how the ALJ purportedly erred in weighting Dr. Jensen's opinion; plaintiff merely describes the ALJ's opinion. The Court thus need not consider any potential error in the ALJ's consideration of Dr. Jensen's opinion. *See Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) ("[W]e will not ordinarily consider matters on appeal that are not specifically and distinctly argued . . . ." (quotation omitted)).

Drs. Winslow and Hennings: The ALJ erred in her analysis of Drs. Winslow and Henning's opinions. As with Dr. Roman, the ALJ relies heavily on irrelevant findings from after the closed period of disability: for instance, that plaintiff's "most recent treatment records" do not document panic attacks, that she does not require "regular supervision in her current job,"

and an ambiguous reference discussion of "evidence subsequent to" the doctors' "review of the record." Tr. 24. The ALJ also erroneously relies on the fact that plaintiff "was regularly engaging in activities." *Id.* The ALJ, however, neither specifies which activities these are, such that it could be determined whether these are inconsistent with an inability to work, nor indicates the time frame of these activities, whether during or after the closed period. The Commissioner refers to activities from pages earlier in the ALJ's decision without explaining her basis for inferring that these activities are the ones the ALJ is using as evidence. Even these activities— shopping, watching television, socializing, attending medical appointments, etc.—are unremarkable and do not demonstrate an ability to hold full-time work. *See* Def. Br., at 18 (Docket No. 21). On remand, the ALJ shall reevaluate Drs. Winslow and Hennings' opinions with attention to findings relevant to the closed period of disability.

<u>Dr. Jackson</u>: Despite selectively relying on Dr. Jackon's medical records regarding plaintiff's mental health, Tr. 23, the ALJ assigned Dr. Jackson's opinions "little weight," Tr. 25. *See Havrylovich v. Astrue*, No. CIV. 09-1113-HA, 2011 WL 284731, at *7 (D. Or. Jan. 25, 2011) (finding ALJ erred in relying selectively on parts of doctor's notes in deciding how to weight doctor's opinions). The ALJ's reason was that plaintiff has been working for a year without medication. *Id.* This work history is for the most part outside the closed period of disability and irrelevant. That plaintiff's physical and mental conditions may not have been "a permanent state," or that they may have been "stabilizing with help," per Dr. Jackson, Tr. 504, 517, does not mean that these conditions were not disabling at the time. Further, Dr. Jackson provided the only treating, or even examining, doctor's opinion during the closed period of disability (Dr. Roman's examination was after that period, and the other doctors are nonexamining doctors). The ALJ gave little weight to Dr. Jackson's opinion "because Dr. Jackson did not provide a detailed

opinion of the claimant's ability to perform basic work activities (e.g., how long could she stand or walk, or whether she could interact with others)." Tr. 25. While it is true that Dr. Jackson's two handwritten notes (including the July 6, 2011, note in which Dr. Jackson states "I don't see how she [plaintiff] could be functional enough for any meaningful job," Tr. 517) are very brief, the record contains ten months of medical records, covering numerous appointments, *see* Tr. 504-33, in which Dr. Jackson reported frequently about plaintiff's impairments, including potential limitations imposed, *e.g.*, Tr. 514 ("uses a cane, moves slowly"), 522 ("little facial expression, has dark circles under eyes," "seems flat, irritable"), 531 ("FIBROMYALGIA makes it hard to exercise. She 'walks to the mailbox' everyday [sic] and that's hard to do!"). Further, while the ALJ "is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, . . . he cannot reject them without presenting clear and convincing reasons for doing so." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quotation omitted). It was error to dismiss Dr. Jackson's opinions as unsupported without considering these records. On remand, the ALJ shall reconsider Dr. Jackson's testimony, including her treatment reports, and sufficiently explain its weighting relative to the nontreating doctors' opinions.

Therefore, the ALJ must reexamine the weight assigned, as to each individually and in comparison to each other, the opinions of Drs. Roman, Winslow, Hennings, and Jackson.

## II.     Combination of Impairments Equal to a Listed Impairment

Plaintiff argues that the ALJ failed to consider whether plaintiff's combined mental and physical impairments equal a listed impairment.

"To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999) (italics omitted). "[F]or a claimant to qualify for benefits by showing

that his unlisted impairment, or combination of impairments, is medically equivalent to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)

The ALJ analyzed whether plaintiff's impairments met or equaled Listings 12.02 ("Neurocognitive disorders"), 12.04 ("Depressive, bipolar and related disorders"), and 12.06 ("Anxiety and obsessive-compulsive disorders"). Tr. 17-19. The ALJ found that in activities of daily living, plaintiff had mild restrictions; in social functioning, moderate restrictions; and in concentration, persistence, or pace, moderate difficulties; the ALJ also found that plaintiff had experienced no episodes of decompensation of extended duration. Tr. 18. The ALJ thus found that plaintiff did not meet the paragraph B criteria for these listings. *Id.* Plaintiff also did not meet the paragraph C criteria of listing 12.02, because she lacked a chronic organic mental disorder of at least two years duration with certain functional limitations. *Id.* Nor did plaintiff meet the paragraph C criteria of listings 12.04 or 12.06, because she lacked sufficient periods of decompensation or functional limitations. Tr. 18-19.

Plaintiff argues that "the ALJ did not discuss whether Ms. Miles's combined mental *and* physical impairments equaled a listing; she simply provided the conclusory statement as finding #3 that the combination did not equal a listing. This is insufficient to meet the Commissioner's burden to evaluate the question of whether a combination of impairments *equals* a listing." Pl. Br., at 14 (Docket No. 20) (italics in original). This argument is legally incorrect, as it is plaintiff who has the burden to show equivalence to a listing. *Burch*, 400 F.3d at 683. Also, the ALJ did explain why plaintiff did not have the extreme or marked limitations required by Listing 12.04. Plaintiff's arguments why her impairments in combination equal a listing but alone do not meet a

listing is of no avail. Plaintiff did not have limitations to the required degrees given any or all of her impairments to meet the listings.

Plaintiff then argues that she "had a combination of physical and mental impairments that *likely* equaled Listing 12.04 . . . on the theory that the effects of chronic pain very strongly mimic the effects of depression." Pl. Br., at 14 (Docket No. 20) (italics added). This is insufficient to meet plaintiff's burden. Plaintiff cannot allege that the ALJ erred by arguing that something *might probably* be the case. Further, "an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683. But plaintiff presents no such evidence. She merely asserts in briefing that chronic pain mimics depression. This is argument, not medical evidence.

Plaintiff has thus not shown that the ALJ committed any error in determining that her impairments in combination do not medically equal a listed impairment.

### III. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred in finding plaintiff less than credible in her subjective complaints. The ALJ found that although plaintiff's impairments could reasonably have been expected to cause some of the alleged symptoms, plaintiff was only partially credible regarding her limitations. Tr. 21. The ALJ found that there was evidence that plaintiff may not have been as limited in functioning as she alleged, and that the objective medical evidence did not support the degree of physical or mental limitations plaintiff alleged. Tr. 21-22.

When deciding whether to accept a claimant's subjective symptom testimony, the ALJ performs a two-stage analysis. First, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of

listing is of no avail. Plaintiff did not have limitations to the required degrees given any or all of her impairments to meet the listings.

Plaintiff then argues that she "had a combination of physical and mental impairments that *likely* equaled Listing 12.04 . . . on the theory that the effects of chronic pain very strongly mimic the effects of depression." Pl. Br., at 14 (Docket No. 20) (italics added). This is insufficient to meet plaintiff's burden. Plaintiff cannot allege that the ALJ erred by arguing that something *might probably* be the case. Further, "an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683. But plaintiff presents no such evidence. She merely asserts in briefing that chronic pain mimics depression. This is argument, not medical evidence.

Plaintiff has thus not shown that the ALJ committed any error in determining that her impairments in combination do not medically equal a listed impairment.

### III. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred in finding plaintiff less than credible in her subjective complaints. The ALJ found that although plaintiff's impairments could reasonably have been expected to cause some of the alleged symptoms, plaintiff was only partially credible regarding her limitations. Tr. 21. The ALJ found that there was evidence that plaintiff may not have been as limited in functioning as she alleged, and that the objective medical evidence did not support the degree of physical or mental limitations plaintiff alleged. Tr. 21-22.

When deciding whether to accept a claimant's subjective symptom testimony, the ALJ performs a two-stage analysis. First, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of

symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms, but only to show that it could reasonably have caused some degree of the symptoms. *Id.* In the second stage, the ALJ assesses the credibility of the claimant's testimony regarding the symptoms' severity. *Id.* The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan*, 246 F.3d at 1208. General findings are insufficient to support an adverse credibility determination; the ALJ must rely on substantial evidence. *Id.* In order to find a plaintiff's testimony regarding the degree of impairment unreliable, the ALJ must make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may consider many factors in weighing a claimant's credibility, including

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quotation omitted).

Plaintiff first attacks the ALJ's finding that her subjective complaints were not consistent with medical evidence. However, plaintiff's argument relies on the theory that the ALJ failed to "discuss findings consistent with [plaintiff's] own report of her mood and physical state." Pl. Br., at 8 (Docket No. 20). Plaintiff points to various symptoms, reports, and pieces of evidence that she contends are consistent with her testimony and that the ALJ should have, but did not,

consider. These include plaintiff's inability to leave her home at certain times due to pain, her use of anxiety medications to tolerate shopping trips, her anxiety's interference with her community college studies, her observed difficulty in performing a squat, and her appearance at one appointment with a blunted affect and at another with uneasy posture. *Id.* at 9. Plaintiff also cites vocational rehabilitation notes from 2006 and 2007 (before the period of disability) that describe her favorably. *Id.* Contrary to plaintiff's argument, however, the ALJ did consider numerous pieces of evidence that were consistent with plaintiff's complaints, for instance: her inability to get out of bed or function because of pain and depression, limitations that anxiety imposed, her need to take breaks at work, findings of pain reactions upon physical examination, ADD and bipolar disorder diagnoses, her presentation with labile affect at a psychiatric consultative exam, and her presentation at another consultative exam with slowed motor behavior and noticeable pain behavior. Tr. 20-24. The ALJ thus considered ample evidence that would support plaintiff's symptom complaints.

Plaintiff argues, identifying assorted citations, that the ALJ should have reached a different conclusion regarding her credibility. ALJ makes credibility determinations, and, because the ALJ considered and relied upon substantial evidence (both evidence consistent with, and evidence contrary to, plaintiff's complaints), the Court must uphold that determination. *Tommasetti*, 533 F.3d at 1039. Plaintiff does not in fact argue that the ALJ *lacked* substantial evidence; she merely seeks a determination based on different evidence. The ALJ need not discuss or identify every piece of evidence or finding in the record. *Howard* ex rel. *Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). She must only consider the entire record, and provide sufficient evidence for her conclusion. The ALJ therefore did not err in not attending to the scattered references that plaintiff identifies.

Next, plaintiff argues that the ALJ erred in considering plaintiff's activities of daily living; plaintiff argues that, contrary to the ALJ's determination, her activities do not indicate that she was capable full-time work. Plaintiff goes on to describe the degree of her impairments and why the capabilities shown by those activities fall short of an ability to work. *See* Pl. Br., at 9-10 (Docket No. 20). The ALJ did not find that plaintiff, as shown by her activities, was able to sustain full-time work. Rather, the ALJ relied on plaintiff's daily activities to make a different point: that plaintiff was not as limited as she reported, and so her subjective complaints were not credible. Tr. 21. The comparison is not between level of activity and capacity for full-time work, but instead between level of activity and claimed limitations, with any discrepancies undermining credibility. This is a valid reason to discount subjective testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("[A]ctivities . . . may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). Plaintiff does not present any argument that it was an error to find plaintiff's activities inconsistent with her subjective testimony. The ALJ thus did not err in analyzing plaintiff's daily activities.

The ALJ also observed that plaintiff was able to function without medication: "There is minimal evidence of medical care for her back pain and myalgia during the relevant period. Her ability to work without medication further suggests she could perform work activity within the residual functional capacity finding." Tr. 21. Plaintiff testified that she was off medication because she had lost her insurance and so could not access medication after 2012. Tr. 63. It is error to fault a plaintiff for not taking medication due to lack of insurance. *Franz v. Colvin*, 91 F. Supp. 3d 1200, 1208 (D. Or. 2015). Nonetheless, this error was harmless, as even without this erroneous basis to question plaintiff's credibility, the ALJ gave other valid reasons to discount

her testimony; there thus remains "substantial evidence supporting the ALJ's conclusions on . . . credibility," and this error "does not negate the validity of the ALJ's ultimate [credibility] conclusion." *Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004).

Plaintiff's arguments why the ALJ should not have discounted her subjective testimony are unpersuasive. Plaintiff has offered no other argument that the ALJ failed to support her credibility determination with substantial evidence or sufficient specificity. The ALJ therefore did not err in finding plaintiff only partially credible.

## IV. Plaintiff's RFC and Ability to Perform Other Work

At step five, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy, in part on a hypothetical posed to the VE. Tr. 27. Plaintiff argues that the hypothetical did not consider all her limitations supported by the record, and so the ALJ did not properly consider whether she could perform other work.

At step five, burden shifts to the Commissioner to prove that a plaintiff is capable of working an eight-hour day at an alternate job that exists in significant numbers in the national economy, considering the plaintiff's RFC. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). The ALJ may elicit VE testimony, but any hypotheticals posed to the VE must consider all of the plaintiff's limitations supported by the record. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2005). The hypothetical need only include credible limitations "based on medical assumptions supported by substantial evidence in the record." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). A plaintiff cannot show a step five error merely by restating arguments that the ALJ improperly discounted certain testimony, when the ALJ did not so err. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Because the ALJ erred in weighting and discounting the medical opinions, and must reevaluate those opinions on remand, the ALJ must also reevaluate plaintiff's RFC and ability to perform other work in light of the new weight and consideration she gives to those experts.

## V. Remedy

It lies within the district court's discretion whether to remand for further proceedings or to order an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citation and italics omitted). This "credit-as-true" rule, *Garrison*, 759 F.3d at 1020, has three steps: first, the court "ask[s] whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; second, if the ALJ has erred, the court "determine[s] whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful"; and third, if the court "conclude[s] that no outstanding issues remain and further proceedings would not be useful," it may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding." *Treichler v. Comm'r*, 775 F.3d 1090, 1100-01 (9th Cir. 2014) (quotations, citations, and alterations omitted). The court may then "remand to an ALJ with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1020.

At the first step of the credit-as-true analysis, the Court finds that the ALJ erred in considering and weighting the medical opinions. However, at step two, the Court finds that there remain outstanding issues to be determined and that further administrative proceedings would be useful, specifically, to determine how properly to analyze and weight those doctors' opinions, and what conclusions thereby to reach about plaintiff's RFC and ability to perform other work. Remand for immediate award of benefits is not appropriate. Thus Court thus remands for further proceedings in accordance with this Opinion and Order.

## CONCLUSION

For these reasons, the Court find that the ALJ erred in weighting the medical evidence and doctors' opinions. Pursuant to 42 U.S.C. § 405(g), sentence four, the Court REVERSES the Commissioner's decision and REMANDS for further administrative proceedings, to reconsider this evidence in accordance with the above; the ALJ shall also reconsider plaintiff's RFC and ability to perform other work. As to plaintiff's other asserted errors, the Court finds that the Commissioner's findings are based upon substantial evidence in the record and on the correct legal standards, and are not in error.

IT IS SO ORDERED.

DATED this 7th day of August, 2017.

/s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge